LAND, J.
Relator was convicted and fined in the recorder’s court of having in his possession for sale adulterated milk, or milk below the standard defined by City Ordinance 15,540, C. S., adopted September 5, 1899. On appeal the sentence was affirmed by the criminal district court of the parish of Orleans. Whereupon the relator applied to the Supreme Court (for writs of certiorari and prohibition. The case is before us on the answer of the respondent judge and the record in the court below.
The ordinance fixes the standard of normal or pure milk, and provides that all milk falling below the prescribed test, or any milk from which the cream has been removed, or to which water, foreign fats, coloring matter, or any other foreign or extraneous substance has been added, shall be considered as adulterated. The third section provides that every person who sells milk shall be obliged to furnish to any sanitary officer or inspector of the board of health on application therefor a sample of the milk sold by said vendor from the can or other vessel from which it is sold to the public.
Section 4 of the ordinance reads as follows:
“Sec. 4. Whoever shall have in his possession for sale or whoever shall sell any adulterated milk as defined by this ordinance, or who shall refuse to furnish the sample as provided in the preceding section, shall be fined not more then twenty-five dollars or sentenced to not more than thirty days imprisonment in the parish prison in default of the payment of the fine.”
Relator was the president of the Clover-land Dairy Company, and in such capacity received at a railroad depot a shipment of 26 sealed 10-gallon cans of milk from farmers under contract to supply the dairy company. On the arrival of the cans, they were inspected at the depot, and one or two of them were found to contain milk below the standard fixed by the ordinance.
The undisputed evidence is to the effect that each can of milk consigned to the dairy company was paid for on the basis of quality, and was tested at the dairy plant immediately on arrival for the double purpose of fixing the price and ascertaining whether the milk was below the standard fixed by the city ordinance. The can of milk did not become the property of the dairy company until it was so tested, and the price fixed according to its quality. When the test showed that the milk was below the legal standard, the dairy company either raised it to the standard by the addition of cream, or used it for the purpose of making butter, cheese, or cream cheese. The milk intended for sale was always bottled.
The question to be determined is whether the relator had the can of adulterated milk “in his possession for sale” in the sense of section 4 of the ordinance. Section 3 provides for the taking of a sample of milk “from the can or other vessel from which it is sold to the public.”
The next section penalizes the possession for sale or the sale of adulterated milk. The-purpose of the ordinance is to protect the consumers of milk sold in the usual manner for table and other uses. The “possession” referred to in section 4 is that which accompanies the customary sale of milk for consumption. The object of the ordinance is the protection of the public health. The mere possession of milk below the standard fixed by the ordinance is innocuous, and does not come within the purview of section 4, unless such possession is for the purpose of sale for consumption. If the dairyman in making his *517 rounds carries with him adulterated milt, or if the dealer exposes such milk for sale, it may be presumed that his possession is for the purpose of sale. If the mere fact that dairyman has adulterated milk in his possession creates a presumption that he intends to sell the same in contravention of law, then a dairyman may be convicted on evidence that he had drawn from one of his Holstein cows milk below the legal standard, or, as in the instant case, on evidence that he had received a consignment of milk, some of which was below such standard. Such a construction would, moreover, penalize the use of milk below the standard for the legitimate purpose of making butter, cheese, or other byproducts.
We do not believe that such a rigid construction of the ordinance is justified by either the letter or spirit of the ordinance, or from consideration of public health or policy.
It is therefore ordered that the sentences below be annulled and set aside, and that the relator be discharged without day and his bonds canceled.
BREAUX, O. J., concurs in the decree.